The Honorable Judge of the United States Circuit of Appeals, standing before the Judge of the U.S. Circuit. Hear ye, hear ye, hear ye. All persons having business before the Honorable Court are admonished to draw near to your attention. The Court is now sitting. The Honorable Judge of the United States and the Honorable Court. Good morning, all. Our first case this morning is Harer v. Casey. Mr. Murphy. Good morning, Your Honors. May it please the Court. The primary focus of this appeal is the scope of a backward-looking denial-of-access claim. In the instant case, the scope of such claim must be determined for two component parts of the case. The actions that occurred before the filing of the initial complaint and those that occurred after the filing of the initial complaint. From the first time that this Court recognized a denial-of-access claim in Bell v. the City of Milwaukee, the Court has recognized that such a claim is only available in the most extraordinary of circumstances. It is not to be used where a plaintiff has sufficient information to proceed in an underlying claim in a timely manner, and it is not to be used where a plaintiff would receive nothing more than in the denial-of-access claim than in the underlying claim. As the Supreme Court pointed out in Christopher, there's no point in proceeding with a denial-of-access claim where the plaintiff would do just as well by proceeding with a simpler underlying claim. Since Bell, this Court has repeatedly held that if a plaintiff has sufficient information to proceed in an underlying case in a timely manner, there is no denial-of-access claim. That is the case here. Plaintiffs know the identity of Phil Flores. They've filed a claim against him that remains pending in the district court. Moreover, it's in the same case as the denial-of-access claim, so it's there before in the same court before the same judge. It's thus reasonable to question whether the plaintiffs can expect to get anything in a denial-of-access claim they cannot get in the underlying claim. Mr. Murphy, this is Judge St. Eve. What's the status of the underlying state court claim? Has that been stayed pending the appeal, or is that going forward? That is going forward, Your Honor, because there is the underlying claim against Crest Hill, Flores, and Shanahan. And has the district court judge there done anything since this appeal was filed to limit the claims in the district court case going forward against those other defendants? He has not, Your Honor. And then also, frankly, with COVID-19, other procedures in that case have been delayed. So we're really at the first status conference, and we have had a new magistrate on it, so the next thing is we are having a status in this coming month on it. And you mentioned Bell, which is still good law, as you know. How do you think Bell is distinguished from the other cases that have failed to establish a judicial access claim? What's the key element, or what are the key elements about the Bell case? Well, the key elements are really that I think the Milwaukee Police Department in that case was in the sole possession of all the facts. At least that's what the Seventh Circus has been focused in on. It was a police officer from the Milwaukee Police Department that was involved in the underlying wrong involving the death of Bell. And then it was the Milwaukee Police Department that was involved in the investigation and the cover-up. And there is also, I think because of the timing of 1958 Milwaukee, there are racial overtones that also prevented the Bells from actually proceeding with their claim in an efficient and effective way. By comparison, all of the Seventh Circuit cases since then have said if you have sufficient information to proceed on the case, that is enough and there is no denial of access claim. And clearly that is what we have here. Plaintiffs know the identity of Phil Flores. They and the police officers from Shanahan were not involved in the underlying act. They only came onto the scene later. But more importantly, where this is very different from any of the other cases, is just the information that plaintiffs have shown that they know through the complaint. They know, for example, that Flores is tested positive for gunshot residue. That Samantha Hare tested negative for gunshot residue. That Flores made false and conflicting statements when interrogated. That Flores had blood on his right sleeve in front of his sweatshirt. And that a neighbor or neighbors heard cries of let me go. That Hare was found in a mood after she had been shot. And that she had other unspecified injuries on her body. So the type of information that plaintiffs in this case have is far different than in Bells. And even more, it seems, than in many of the other cases where the courts have found it being insufficient. So those are the main distinctions, I would say, within Bell. I think the other thing with Bell is that there are some very broad statements that perhaps in hindsight could be somewhat limited. The other thing with the pre-filing conduct in this case that the plaintiffs have conceded is that they know of no injuries in this case. The only claims that they have of concrete injuries are based on the post-filing claims and post-filing activities. And what are those activities? What they claim is that officers Bogart and Casey led them to believe that they could not pursue their action against Flores in light of the coroner's suicide findings. In other words, what plaintiffs claim is that defendants gave them a faulty legal opinion. Now, as an initial matter, for purposes of qualified immunity, plaintiffs have provided no case that is clearly established that post-filing activity can lead to a denial of access claim, nor have they provided any case law that a legal opinion, faulty or otherwise, can lead to denial of access claim. And we've gone through a number of policy considerations with regard to why there should not be a denial of access claim when it is post-filing. To begin with, I'd call attention to Harold Ross's Cook, which is sort of dealt with the type of injury that is required. And there the court indicated there should be either an outright concealment of a claim or destruction of essential proof. And this sort of limits a little bit of what Dell said, which is within sort of broader context. But a faulty legal opinion involves neither of these things. And so for that reason alone, the fact that there was no clearly established law, qualified immunity should be granted with regard to the post-filing activities. But also, there should be no constitutional violation because of all of the policy considerations. If you're talking about denial of access, you're talking about what the court can do when a case is actually filed. And when a case is actually filed, the court can deal with many of the wrongs that would even be alleged here. And most of them would be dealt with through appropriate discovery. Mr. Murphy? Yes. Judge Scudder has a question for you. Can you hear me okay, Mr. Murphy? Yes, I can. Okay. Quick question for you. Just a contextual question. What was the point of the December 28th meeting? The point of the December 28th meeting was actually to give them information, to give the Harrors – and this is not in the complaint. But in context, it was to give the Harrors information about what the coroner had determined and to tell them that if they wanted to look at information, it would be made available to them. It later was made available to them through a FOIA request, but the documents didn't come out until actually the day that the case was dismissed. And am I right in understanding, just as a factual matter, that the plaintiffs had already missed or chosen not to attend one pretrial conference by the time that December 28th meeting rolled around? That is correct. The reason that they missed it is, I think, is up in the air. I think plaintiffs have said in their motion to vacate that the reason for that is that they were unaware of it because their prior counsel had not informed them of the date. Okay, thank you. So I'm not sure that – well, it's not on Shanahan's shoulders. I'm not sure that it's entirely on the plaintiff's shoulders either. Do you want to save some time for rebuttal, Mr. Murphy? Yes, please. Okay. And I will end there and save my remainder time for rebuttal. All right. Ms. Bongean? Good morning, Your Honor. Can you hear me okay? Yes. Okay. May it please the Court, my name is Jennifer Bongean, and I represent the plaintiffs in this matter, Heather and Kevin Hare, the co-executives of the estate of their deceased daughter, Samantha Hare. In the wake of Samantha Hare's death, the Shanahan defendants conducted an investigation that, as our complaint sets forth, was designed to clear Crest Hill Police Officer Felipe Flores of wrongdoing. They did so in a number of ways that is set forth, but just in summary fashion, as the amended complaint sets forth, they lied to the plaintiffs about the results of gunshot residue tests. They provided false explanations to Illinois State Police investigators about why Flores was covered with blood spatter. They concealed witness reports of a struggle that immediately preceded the shooting. And they gave false statements to the plaintiffs about the substance of Samantha's toxicology report. And these were statements that were provided to the plaintiffs at a meeting that took place in December that was designed to, as Mr. Murphy points out, that was to inform the plaintiffs about the underlying investigation and what it showed. Ms. Bongean, this is Judge St. Eve. Assuming we'll take everything you've said as true, why, and I think you agree there is an underlying claim still pending against Officer Flores and two police departments. Why, or villages, why wouldn't the activity that you have just described, the post-filing of this claim, be better addressed as some type of a discovery issue? And let the district court judge, who's familiar with the case, familiar with the allegations, familiar with the conduct of the parties, address it through the discovery process, as opposed to a separate claim for lack of access? Because it does constitute a backward-looking access-to-courts claim. Maybe not one with the damages that would parallel what they may be entitled to if they are able to prove the underlying claim. Have we ever recognized such a backwards-looking or post-filing conduct as a constitutional violation for lack of access to the courts claim? Yes, and I believe Judge Gettleman pointed out a number of cases in which it's delayed. Where the Seventh Circuit has recognized such post-filing conduct as failure to get judicial access? Well, this is, when you say post-filing conduct, Your Honor, the original complaint, of course, was dismissed because of the duplicities of the Shanahan Police Department. We are not talking about sophisticated lawyers. We're talking about traumatized parents who were relying on representations, false representations, when they abandoned a claim. Again, we'll take that as true, but then a motion was filed to reinstate through the district court judge that granted it. So why should we recognize, really, a separate constitutional tort when you were able to get the remedy that you wanted, and you may still be able to get all of the remedies that you want through the pending action? Because the mere act of having to file and reinstate, which was only granted at the discretion, of course, of Judge Gettleman, but the mere fact of having to reinstate the claim itself caused a concrete injury. Again, what the damages are or how significant that injury is, we can debate, but it is an injury nonetheless. Somebody had to write that complaint. And I'll ask you again, what court has ever recognized that? What circuit court or any Seventh Circuit opinion that has ever recognized that as a separate constitutional tort for failure to have judicial access? Well, if I may... And I'm talking about this post-filing conduct, in particular. What the courts have, and I don't know that I can give an answer post-filing. I don't know that the issue turns on post-filing or not post-filing. Well, you do have separate claims in there, and this is a qualified immunity. So if you can't identify a case, how can we say it's clearly established for purposes of qualified immunity? Well, for instance, in the LaPorta case, there was an access to claim filed in an amended complaint while the complaint was pending because of the delay that was caused during the litigation, because the litigants, the defendants, the city of Chicago had failed to produce information. That is, I guess, qualifies as a post-filing claim. It happened in the middle of the litigation. They amended their complaint to add an access to court claim because of the behavior or conduct of the municipality that occurred during the litigation. Ms. Bongi, it's Judge Scudder. Let me ask the same question, or what I think is the same question, a slightly different way and see if your response is any different. Okay? So I have no doubt at all that your clients incurred expenses and time in having to reopen the case. That just seems clear as a factual matter to me. But how do those costs, which are real, and as you're emphasizing, how do those costs reflect or flow from a violation of a constitutional right to access to courts? Your clients are in court right now, and they have the full discovery process available to them, including district courts' authority to impose sanctions in the event that there would be misconduct during discovery. So I understand that you incurred time and expenses, or your clients did. That's as clear as a bell to me. But what I can't do is connect that to the alleged constitutional injury, denial of access to courts. That's where I get disconnected. If Your Honor has completed his question, I will respond in this way. As Bell held, a denial of access to courts claims isn't literally barring the door. It isn't just because you can get past a 12b6 motion and into discovery. The Seventh Circuit has held where there has been delay in bringing a claim, where there has been efforts that have been hindered. And it's not just about access. It's meaningful, effective access, which is bound. The United States Supreme Court has held that. So our position is that while Shanahan, on one hand, cites the U.S. Supreme Court Christopher for the proposition that, yes, there are these backward-looking claims. And at the same time, they're asking this court, from our position, to do away with them, because this is a backward-looking claim. I understand it is post-complaint. There is a complaint that was filed. But our position is it doesn't turn on that. The injury occurred by, yes, the delay, whether it was weeks, months, whatever it is. There was delay based on what occurred during this meeting and the wild goose chase that the Harrods were sent on. The fact that, yes, they had to reopen the litigation. They would not have otherwise abandoned the litigation. Those are all injuries, as Your Honor has just – or costs, anyways – that Your Honor has just identified. And it is precisely that behavior that was meant to hinder their access to the court. Maybe it didn't ultimately bar the doors of the courtroom, but it did hinder and delay the process and cause them concrete injuries. And for that reason, it is a separate, freestanding, independent claim that stands apart from the underlying action that the plaintiffs will, of course, pursue. And that's the distinction that we believe that the Seventh Circuit has acknowledged in previous cases about delay. And, again, even like I mentioned earlier in the LaPorta case where the access to court claims was raised in the amended complaint mid-litigation. Ms. Bongean, it's Judge Scudder again. In your brief on page 2, on page 2 of your brief, you urge us to decline to exercise appellate jurisdiction because, as you put it, there's open factual questions, not purely legal questions. What are the factual questions that are unresolved that deny us appellate jurisdiction or preclude us from exercising appellate jurisdiction? Well, in reading the Shanahan defendant's brief, there were a couple of things that suggested to me that they were still quarreling with the underlying facts. For one, again, this issue of what is the injury, the concrete injury, and our position is, at a minimum, having to reinstate the case that that was an injury. There may be other injuries, but that was our position was that the extent of the injuries is a factual issue. They also continually reference there are sufficient facts. There are sufficient facts. That is very much up in the air at this moment about whether there are sufficient facts. The fact that we can actually get words on a piece of paper and file the lawsuit and get past the 12B6 motion doesn't mean that there were sufficient facts that provided the plaintiff with effective and meaningful access to this court. In fact, the extent of the harm to this investigation is an unknown fact at this point. There's been no independent investigation. I mean, all of the cases that the defendants have cited, ultimately there was an investigation that revealed the truth. The truth has not yet been revealed. And I do understand the court's point of view. You have that opportunity. The plaintiffs will have that opportunity. But for the defendants to say at this juncture that, oh, they have access to all this information that they got for FOIA requests after the dismissal of their complaint gives them sufficient facts. Well, that is a disputed point, whether these are, in fact, sufficient facts on which they will have effective access to the court to redress the constitutional violations to themselves and their daughter. Ms. Bongean, this is Judge St. Eve. Are there facts that you claim are in dispute that are relevant to the clearly established qualified immunity issue as opposed to whether or not a claim has been stated? And I know those two issues could go together, but just focus on whether or not the law is clearly established. Are there disputed facts on that particular issue? I would say no, Your Honor. Our position is that they lied to the plaintiffs to hinder their ability to access the court, and we're hoping that there would never be a reinstatement of the lawsuit. But we believe that that's clearly established, as did the district court, that you can't essentially lie. The complaint itself also alleges that there were dissections to the plaintiffs and to Illinois State investigators, etc., and that that type of corrupting of the investigative process, the investigators would have known, should have known, that that would hinder someone's ability, the plaintiff's ability, to access the court and to obtain legal redress on their behalf and their daughter's behalf. Ms. Bongean, this is Judge Flom. You have a little over a minute. Do you have anything further, or do you want to sum up? Sure, I will sum up, Your Honor. Thank you. Our position is, and I agree, largely we are in agreement about the contours of this argument. There is a forward-looking strikeout. We do have the underlying claims still intact. The extent to which we're successful, the extent to which the investigation has been irreparably harmed, is an unknown fact. That said, there is a separate, yes, independent constitutional violation when the Shanahan defendant misled Duke to trick the plaintiffs into abandoning a lawsuit based on false facts that are indisputably false, at least must be accepted as indisputably false at this point. And when they did so, that was an effort to hinder their access to the court. And as a result, they were required to expend time, resources, money to reinstate a lawsuit that is, at this juncture, moving forward. But that does not change the fact that there was this separate concrete injury to the plaintiffs, and that is where the act of the court's claim lies in this litigation. All right. Thank you, Ms. Bongean. Mr. Murphy? Thank you. To answer your question, there has been no Seventh Circuit case that has recognized a post-filing conduct claim. And, in fact, the other circuits, as we pointed out, have said that there is no post-filing conduct claim. This investigation differs very differently also from Bell because, as the complaint makes clear, other police agencies were involved in the investigation, including the Will County Task Force and the Illinois State Police. So there are other avenues available for discovery in this case and to the investigation other than even the Shanahan Police. That's something that just did not occur within Bell. With regard to the statements that they said were unknown facts – well, let me just back up. The statements with regard to the December 18th meeting were largely, if not entirely, opinions. If we were looking at just a fraud claim, that would be insufficient for a fraud claim. Why is a denial-of-access claim to have lower standards? There has been no offer of a reason for that. With regard to the unknown facts, if that is a basis for bringing a denial-of-access claim, you can bring a denial-of-access claim then in any case where there have been state actors involved in the investigation because until you go through a discovery and until you go through a trial, you're not going to know what impact the investigation had on a case. That just is an insufficient standard to provide for denial-of-access claims. So we would ask you to reverse the denial of the motion to dismiss based on qualified immunity. One more question, please, before you go. Certainly. If we focus on the question of whether or not the law was clearly established at the time and determined that it was not, is there any reason for us to go further and decide whether or not the plaintiffs have alleged a constitutional violation in the first instance? There is perhaps not, though I probably wish you would. I thought that might be your answer. Okay, thank you. There is not a reason, though. Thank you, Mr. Murphy. You're welcome. Thank you. Did you have anything further, Mr. Murphy? No, that's it, Your Honor. All right. Well, our thanks to both counsel, and the case is taken under advisement.